IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SUE HARMON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LENOVO (UNITED STATES) INC.,<br><br>Defendants. | Case No. 3:23-CV-1643-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Sue Harmon ("Harmon") bought a smart clock manufactured by Defendant Lenovo (United States) Inc. ("Lenovo"), and filed this class action lawsuit when the clock allegedly did not work as advertised. (Doc. 1). Lenovo has moved to dismiss the Class Action Complaint for failure to state a claim. (Doc. 11). Harmon filed a response in opposition (Doc. 13), and Lenovo filed a reply in support of its position. (Doc. 15). For the reasons set forth below, Lenovo's motion to dismiss is granted.

### BACKGROUND

The following facts are derived from Harmon's Class Action Complaint (Doc. 1), and the Court accepts them as true for the purposes of Lenovo's motion to dismiss.

Harmon purchased a Lenovo smart clock "from stores including Amazon.com in 2022 and/or among other times," which promised to have a "big & bold display [so] you can check out the time from across the room" as a result of its four-inch LED display. (Doc. 1 at ¶¶ 1, 27). Lenovo also allegedly advertised the clock as "a great night-time

companion with its built-in nightlight that provides a small source of light." (*Id.* at ¶ 6). Lenovo sells the clock for no less than $49.99, excluding tax and sales. (*Id.* at ¶ 26). Harmon does not identify the model number or name of the smart clock, nor does she explain where she saw these alleged representations.

Harmon alleges that she bought the clock because she believed and expected it would capably and adequately display the time and temperature, regardless of the amount of ambient light in the room. (*Id.* at ¶¶ 26, 28). She also believed it would not prematurely suffer from display failures. (*Id.*). Shortly after buying the clock, however, Harmon's device suffered from LED screen display defects where the time and temperature displayed did not appear complete or readable because parts of the numbers comprising them were faded and/or non-existent. (*Id.* at ¶ 29). Harmon claims these defects are the result of LED lights that consistently burn out prematurely and fail to adjust to changing levels of ambient light. (*Id.* at ¶ 3). This means users cannot actually check the time and weather because the screen dims when the amount of ambient light dims. (*Id.* at ¶ 4). Harmon's Class Action Complaint contains the below images of the alleged unnamed clock, but she does not allege that either image is from her clock, nor does she provide any source for the images.

 

Harmon attributes these issues to manufacturing defects and quality-control failures. (*Id.* at ¶ 9). The circuits in LED displays contain numerous components, and where one of these components is faulty or where quality control is lacking, the result will be a display failure for the user because of overheating, among other things. (*Id.* at ¶ 10). Additionally, the use of incompatible and defective LED drivers causes improper power distribution, making it more likely for the screen to suffer from display failures. (*Id.* at ¶ 11). Harmon alleges that because Lenovo uses low-grade materials that wear out quicker than expected, it is likely that the display will become non-functioning shortly after the clock's first use. (*Id.* at ¶ 12). Harmon further alleges that Lenovo consistently denies claims for warranty coverage, attributing the display failures to consumer misuse. (*Id.* at ¶¶ 14-15). Had she known that Lenovo's representations about its smart clock were false and misleading, Harmon asserts, she would not have bought the clock or she would have paid less for it. (*Id.* at ¶ 36).

On May 15, 2023, Harmon filed this suit as a putative class action under Federal Rule of Civil Procedure 23. (Doc. 1). Harmon seeks to certify two classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class:** All persons in the States of Mississippi, Utah, Wyoming, Idaho, West Virginia, Louisiana and Kansas who purchased the Product during the statutes of limitations for each cause of action alleged.

Harmon brings claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") and the state consumer fraud acts applicable to the multi-state class; breach of contract; breach of express warranty, implied warranty of

merchantability/fitness for a particular purpose and the Magnuson Moss Warranty Act; negligent misrepresentation; and fraud. As relief, she seeks statutory, compensatory, and/or punitive damages, restitution, costs and expenses, and injunctive relief. (*Id.*).

## SUBJECT MATTER JURISDICTION

This case was filed pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). Under CAFA, federal courts have jurisdiction to hear a class action if the proposed class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million. *Sudholt v. Country Mut. Ins. Co.*, 83 F.4th 621, 625 (7th Cir. 2023) (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B)).

Here, Harmon is a citizen of Illinois, Lenovo is a citizen of Delaware and North Carolina, and the class that Harmon seeks to represent are citizens of states other than Delaware and North Carolina. (Doc. 1 at ¶¶ 18-20). Thus, there is minimal diversity between the parties. Harmon also alleges that the class she seeks to represent consists of more well more than 100 members, and that the aggregate claims of the proposed class exceed $5 million, including any statutory damages, but exclusive of interest and costs. (*Id.* at ¶¶ 17, 21). This Court, therefore, has subject matter jurisdiction over the action.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, the plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations,

but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.*

The court must also accept the complaint's well-pleaded factual allegations and draws all reasonable inferences—but not legal conclusions—in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013). Taken together, the factual allegations contained within a complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555 (internal citations omitted).

## DISCUSSION

Lenovo moves to dismiss this action in its entirety for failure to state a claim. Lenovo argues, in sum, that Harmon based her Class Action Complaint "on an unspecified smart clock model that she claims she purchased from an unspecified place, on an unspecified date, for an unspecified price, and without explaining what (if any) advertising representations she saw beforehand, omitting this most basic information while asserting wide-ranging claims of 'fraud.'" (Doc. 11 at pp. 9-10). Lenovo then attacks the sufficiency of each of Harmon's claims.

In response, Harmon concedes the dismissal of her express warranty, negligent misrepresentation, common-law fraud, Magnuson-Moss Warranty Act, and the consumer fraud multi-state class claims, as well as her request for injunctive relief. She argues, however, that her claims related to the ICFA, breach of contract, and implied warranty of merchantability should survive Lenovo's motion to dismiss.

The Court addresses each claim in turn.

### A. Deceptive Acts or Practices Under the ICFA

The ICFA protects consumers against unfair or deceptive acts or practices, including but not limited to the use of deception, fraud, false pretense, false promise, misrepresentation, or concealment, or the omission of any material fact. 815 ILL. COMP. STAT. § 505/2. A practice is deceptive "if it creates a likelihood of deception or has the capacity to deceive." *Floyd v. Pepperidge Farm, Inc.*, 581 F. Supp. 3d 1101, 1109 (S.D. Ill. 2022) (citing *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001)).

To state a claim under the ICFA, a plaintiff must plead facts demonstrating that: (1) the defendant committed a deceptive or unfair act; (2) the defendant intended that others rely on the deception; (3) the act occurred in the course of trade or commerce; and (4) the act caused actual damages. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (citing *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019)). "If the claim rests on allegations of deceptive conduct, then [Federal Rule of Civil Procedure] 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud." *Id.* That is, the plaintiff must identify the "who, what, when, where, and how" of the alleged fraud. *Id.*

Courts apply a "reasonable consumer" standard when evaluating whether a statement is deceptive or has the likelihood to deceive. *Id.* Under this standard, a plaintiff must prove that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020).

As an initial matter, Harmon has not pleaded the circumstances constituting fraud

with the requisite particularity. She says she purchased a Lenovo smart clock in 2022 "and/or among *other times*," "from stores *including* Amazon.com," but she does not provide the name of the clock or a model number, and she does not allege facts as to when, where, how—or even if—she read the alleged false and misleading statements.

Even if she had adequately alleged her allegations of deception, the facts that Harmon has pleaded are insufficient to support an ICFA claim. According to Harmon, Lenovo promised that its smart clock would have a "big & bold display [so] you can check out the time from across the room," that users could "check[] the time & weather," and that it would be "a great night-time companion with its built-in nightlight that provides a small source of light." In her ICFA claim, however, she asserts that she believed the clock would not suffer from premature display failures of the LED screen, which prevented it from informing her of the time and temperature outside.

Lenovo's alleged statements regarding the smart clock's abilities are unrelated to Harmon's claim that she believed the clock would not suffer from premature display failures. A reasonable consumer would not be misled into believing the clock was free from the alleged display failures simply because Lenovo said the display was "big and bold," that users could check the time and weather, and that it had a built-in nightlight. *See Bondick v. Ricoh Imaging Americas Corp.*, No. 21 C 6132, 2022 WL 2116664, at *4 (N.D. Ill. June 13, 2022) (finding that a reasonable consumer would not be misled to believe a camera's components would not deteriorate over time based on manufacturer's representations that the camera functioned adequately).

Harmon also argues that, in addition to Lenovo's affirmative statements, its failure

to disclose the smart clock's display failures is an actionable omission under the ICFA. Harmon contends that Lenovo had actual and constructive knowledge that its clock suffered from premature display failures and that she relied on Lenovo's "concealment by silence."

Claims based on a defendant's knowledge and a failure to act instead of direct statements, however, are insufficient to allege a material omission that is actionable under the ICFA. *See Guajardo v. Skechers USA, Inc.*, 503 F. Supp. 3d 746, 755 (C.D. Ill. 2020); *O'Connor v. Ford Motor Company,* No. 19-CV-5045, 477 F.Supp.3d 705, 718–20, (N.D. Ill. 2020) ("Plaintiff does not identify any particular direct statements from Defendant that contain material omissions. For that reason, Plaintiff also fails to state an ICFA claim based on a "material omission" theory."); *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009) ("[W]e have repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission. If there has been no communication with the plaintiff, there have been no statements and no omissions.").

In *Guajardo v. Skechers USA, Inc.*, the plaintiff brought an ICFA claim alleging Skechers omitted material facts about a manufacturing defect in its light-up shoes while, at the same time, attempting to persuade customers to purchase them. 503 F. Supp. 3d 746, 754 (C.D. Ill. 2020). But rather than allege any direct statements that contained material omissions, the plaintiff only alleged opportunities where Skechers *could* have disclosed the alleged defect. *Id.* The court found this was insufficient to state an ICFA claim because the plaintiff did not point to any direct statement with a material omission. *Id.* at 755.

The same is true here. Harmon has not pointed to any specific statement that contains an omission, but rather relies on Lenovo's alleged failure to act. This is insufficient to state an ICFA claim based on an omission.

### B. Breach of Contract

Lenovo next argues that Harmon has not stated a claim for breach of contract when she alleges that she purchased the clock from "stores including Amazon.com"—meaning she has no express contract with Lenovo. Even if that were not dispositive of her breach of contract claim, Lenovo argues, Harmon does not dispute that the contract was for the purchase of a clock, and that she indeed received the clock upon payment.

In response, Harmon asserts that Lenovo breached an *implied* contract when it offered her a smart clock that would allow her to "check the time & weather," she accepted that offer, and then she paid for the clock. Yet, Harmon did not "receive what she bargained for" because the clock's LED lights burned out prematurely, resulting in the inability to "check the time & weather."

Under Illinois law, "the elements of a breach of implied contract claim track those of a breach of express contract claim; a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 590 (N.D. Ill. 2022). Unlike an express contract, however, an implied contract arises from the parties' actions and conduct. *Id.*; *Flores v. Aon Corp.*, --- N.E.3d ---, 2023 WL 6333957, at *6 (Ill. App. Ct. 2023). "Of course, there must also be a 'meeting of the minds or mutual assent as to the terms of the contract.'" *Gallagher Data*

*Breach Litig.*, 631 F. Supp. 3d at 590 (quoting *Nw. Mem'l Healthcare v. Anthem Ins. Companies, Inc.*, No. 21 C 6306, 2022 WL 1620025, at *2 (N.D. Ill. May 23, 2022)).

Despite Harmon's claims to the contrary, there simply are no allegations in the Class Action Complaint sufficient to state a claim for implied breach of contract. Harmon did not pay consideration to Lenovo for smart clock; she purchased it from Amazon and/or other retailers. Thus, there is no valid and enforceable contract between Harmon and Lenovo. Nor has Harmon alleged any mutual assent to the terms of any contract. Harmon's implied breach of contract claim fails.

### C. Implied Warranty of Merchantability

Finally, Lenovo argues Harmon has not stated a claim for breach of implied warranty of merchantability because the alleged description of the smart clock as having a "big & bold display" is just that—a "description," not a warranty that the product is defect free. Lenovo also asserts that Harmon's claim fails because she lacks privity with Lenovo and because she did not notify Lenovo of her claims before filing suit.

Harmon disagrees, asserting that it does not matter what words Lenovo used to describe its smart clock because a clock in which the LED lights consistently burn out prematurely and fail to adjust to changing levels of ambient light is not "of commercially acceptable quality." (Doc. 1 at ¶ 3). She further argues that the direct-dealing exception to privity applies because by marketing its smart clock to "display the time and temperature," it capitalized on consumer expectations that it would actually and adequately do so. Finally, Harmon asserts she provided adequate notice to Lenovo by filing this lawsuit.

The lack of privity between Harmon and Lenovo is dispositive of her claim for implied warranty of merchantability. "In Illinois, whether a complaint bringing claims for breach of the implied warranty of merchantability must plead vertical privity to survive a motion to dismiss depends on the nature of the injury alleged." *Cameron v. Battery Handling Sys., Inc.*, 524 F. Supp. 3d 860, 865 (C.D. Ill. 2021) (citing *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 807 N.E.2d 1165, 1168 (Ill. App. Ct. 2004)). If the plaintiff seeks only economic damages, "he or she must be in vertical privity of contract with the seller: only the immediate seller may be sued." *Id.; see also Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1056 (N.D. Ill. 2022) ("There is no contractual privity between a manufacturer and a person who buys from an independent dealer.").

Here, Harmon seeks economic damages from Lenovo; thus, she must be in vertical privity with Lenovo in order to sue it for breach of implied warranty of merchantability. Harmon, apparently conceding that she does not have privity with Lenovo, argues that the "direct-dealing" exception to the privity requirement applies in this case. That exception applies when there are direct dealings between a manufacturer and the customer, such as when a customer works directly with the manufacturer on product specifications—but ultimately buys the product through a distributor. *See Rhodes v. Pharmacal Co. v. Continental Can Co.*, 219 N.E.2d 726 (Ill. App. Ct. 1966); *Rodriguez*, 596 F. Supp. 3d at 1056 ("[A]s the name suggests, the direct dealing exception applies only where the ultimate purchaser of the product communicated directly with the manufacturer."). "Illinois courts have made clear that their direct-dealing exception does not extend to goods mass-produced and sold at retail to a third-party who is not a

beneficiary of the manufacturer-seller contract." *Harris v. Kashi Sales, LLC*, 609 F. Supp. 3d 633, 643 (N.D. Ill. 2022).

In this case, Harmon has not alleged any direct communications with Lenovo, nor has she claimed to be the beneficiary of any contract between the Lenovo and its third-party sellers. She alleges only that she purchased a Lenovo smart clock from third-party retailers, including Amazon.com. On these facts, Harmon has not satisfied the direct-dealings exception to the vertical privity requirement. Thus, her claim for breach of implied warranty of merchantability also fails.

## Conclusion

For these reasons, the Court **GRANTS** the Motion to Dismiss Plaintiff's Class Action Complaint Pursuant to Rule 12(b)(6) filed by Defendant Lenovo (United States) Inc. (Doc. 11) and **DISMISSES** Harmon's Class Action Complaint without prejudice.

Harmon is **GRANTED** leave to file an Amended Complaint to resolve the identified pleading deficiencies, to the extent she can do so, on or before **May 10, 2024**.

**IT IS SO ORDERED.**

DATED:   April 23, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**